Good morning, Your Honors, and may it please the Court that Damien Schiff on behalf of the appellant, Universal Welding, and with the Court's indulgence, I'd like to reserve about two minutes of my time for rebuttal. The 14 or so acres of low-functioning wetlands that are on Universal Welding's Fairbanks property fall outside of the jurisdictional authority of the Army Corps of Engineers under the Clean Water Act, because those wetlands are only adjacent to other jurisdictional wetlands.  JUSTICE KENNEDY. Counselor, before you get too far on this, and I know that's your overall framework, but I want to ask you about a couple of factual issues that at least I understand you have conceded, but I want to be sure that's just correct. Has your client, I'll call it UW, conceded that the UW wetlands are connected to Channel C as a result of a shallow subsurface flow? Have you conceded that? MR. HENRY. Your Honor, we have assumed for the sake of argument that even if that is true, that does not preclude. JUSTICE KENNEDY. No, I get that. I know you don't, but I'm just saying, you concede there is such a shallow subsurface flow?  HENRY. Your Honor, we have not contested that. The record supports that. JUSTICE KENNEDY. Okay. And secondly, that you have conceded that the wetlands have a significant nexus. I guess I'm reading it because I want to get the facts right, to the China Slough or its legal conclusion that wetlands connected to a relatively permanent body of water through subsurface flow are adjacent under 33 U.S.C. 328.3 C. Do you agree with that? MR. HENRY. Your Honor, again, the same answer that we don't contest that the significant nexus finding that was made by the Army Corps. But I would hasten to add on both of those points. The reason why that's not significant for the outcome of this appeal is for two reasons. One is, with respect to significant nexus, that's really just the first part of the jurisdictional process. The Supreme Court, in their Pano's decision, set forth what it viewed as the outer limit of congressional authority delegated to the Army Corps and to EPA to regulate under the Clean Water Act. MR. HENRY. And EPA promulgated its interpretation of that with a three-part criteria, the first of which is there is an unbroken surface or shallow subsurface connection to jurisdictional waters. The hydrologic connection may be intermittent. So that's their interpretation of what the Court said in Rapinoe's. You say that's not a very reasonable interpretation, but when we're looking at an interpretation of the law by expert agencies, why should we defer to your construction as opposed to that of the expert Corps of Engineers and the EPA? MR. HENRY. Well, in terms of the Rapinoe's guidance, that is combining two separate issues. One is the question of, are these features otherwise subject to the outermost limits of congressional delegated authority under the Clean Water Act? And secondly, have the agencies exercised that authority through their regulations? So on the first point, that's where significant nexus is relevant, but on the second point, that's where the regulatory exception upon which universal welding bases its appeal comes into play.  MR. HOGAN. Aren't you just saying, since you can't do it just because something is adjacent, you can't do it when there's an underwater connection? That's your interpretation of it. It's not their interpretation. And you're saying ours is a better interpretation. MR. HENRY. No, Your Honor. Respectfully, that's not quite what we're contending. What we're contending is that because any allegation of a connection that would otherwise support adjacency here between universal welding's property and drainage channel C, which is about a mile and a half away, any allegation of connection, whether it be subsurface connection or what have you, is wholly and 100 percent a function of the presence of the intervening wetland that separates universal welding's property. But what you're doing is interpreting the regulation. And the Corps has interpreted its own regulation differently than that by saying that the fact that there is also an adjacent wetland is not relevant because of the subsurface flow of water. And in terms of just basic administrative law, aren't they entitled to interpret their own regulation? And don't we owe deference to that, where their interpretation is supported by just a plain textual view of the regulation? MR. GOLDSMITH. Or a reasonable interpretation, one reasonable interpretation of their own regulation. They know what they meant. MR. GOLDSMITH. Your Honor, I would certainly agree that if an interpretation is reasonable in this context under our and Seminole Rock, it is entitled to deference. But here, of course, universal welding contends that it's not a reasonable interpretation. It's actually, in fact, not even one that's been consistently adhered to, even in this administrative process. In fact, on the second administrative remand to the core district, the core district, applying the same regulatory text upon which this appeal follows, concluded that, in fact, these wetlands on universal welding's property are not jurisdictional. And yet, EPA intervened, and the agency ultimately changed its view. But it certainly hasn't been consistent. And – MR. GOLDSMITH. What a requirement. MR. GOLDSMITH. I would argue that, Your Honor, under the Smith-Klein case from the Supreme Court, I think an inconsistent agency interpretation undercuts what might otherwise be deference owing under – MR. SCHROEDER. How about that case? MR. GOLDSMITH. Yes. Yes, Your Honor. But to go back to Judge Graber's point about reasonable interpretations, universal welding does not believe that the interpretation articulated by the core is reasonable because it would render the adjacent wetlands exception a dead letter.  MR. SCHROEDER. Well, you know, with respect, I mean, I get your point. You're a good lawyer. I understand your client's perspective. But even if you just look at this from a common-sense perspective, you know, if you have property that is not connected in any way to navigable waters, which was the concern of Justice Kennedy, then yeah, I get that. But here you've got a conceded connection where water flows into the navigable waters from this area. The agency has construed that as being appropriate under Rapinos – Rapinos, however you want to call it – the ultimate decision of here's this expert agency that under lands counsel and other cases, we're supposed to defer to them unless there's clear evidence that they didn't follow the law or that there's nothing to back up their reasoning. And just as a common-sense matter, since there is a connection, actual physical connection with water, why is that an unreasonable determination and interpretation of the law? MR. KINGTON It's unreasonable here because if there were no such connection, if there were no groundwater connection or any other connection between the property and Channel C, this debate over the scope of the exception would be entirely meaningless because there wouldn't even be a prima facie case of jurisdiction. MS. KINGTON But that's the big if. That's like saying if a certain area doesn't actually have an endangered species in it, then it wouldn't be part of the, you know, plan to deal with the endangered species. There is, in fact, as you – in your earliest exchange with Judge Smith, there actually is a water connection between this parcel and navigable waters. And it's important. And you've conceded that, that it's – that's not the term that they're – that they've used, but they've used the term significant nexus. So that's a given. So saying what would have happened in the absence of that isn't particularly helpful. MR. KINGTON Well, Your Honor, respectfully, I would say that it is helpful because it plays – it puts into relief how the jurisdictional process is really a two-step process. It's not just determining is there a significant nexus, but it's also determining, even with a significant nexus, has EPA or has the Corps exercised its regulatory authority to cover that significant nexus. MR. ALITO What sense would it be if we concede there's a significant nexus, what sense would there be in a regulation that said, but we're going to disregard that nexus if the connection happens to have this other wetland in between? MR. KINGTON Your Honor, it's the logic, I think, that would be behind any sort of jurisdictional exception, as in the most recent Waters of the United States rule that has been proposed for rescission. Even in that new rule, EPA and the Corps suggested a host of jurisdictional exceptions that would apply, even if the agency otherwise had statutory authority to regulate those features. And it's a matter of the agency's discretion as to how they will exercise the authority that Congress has delegated to them. MR. ALITO I haven't heard an answer as to logic, you just say the same illogic pops up in lots of other places. MR. KINGTON Well – MR. ALITO Is that the position you're taking? MR. KINGTON Well, Your Honor, it would be for me to impugn the Corps with any charge of illogicality, but – MR. ALITO But you haven't offered a logical reason for the exception you're trying to get us to buy onto. MR. KINGTON Unfortunately, Your Honor, there really isn't very much, you can call it regulatory history, behind this particular exception. And I believe even the Corps will acknowledge that. There certainly hasn't been much case law addressing the issue either. But for whatever reason, that exception has been on the regulatory book, so to speak, for over three decades. And it is the normal interpretive duty for a court to give all regulatory texts some independent meaning.  MR. KINGTON Well, I see an independent meaning here. You've called it a dead letter, and I don't understand that, because this makes much simpler, I would think, the identification of what's covered and what is not covered. And what this says is you can't automatically assume this is covered because it happens to be adjacent to a wetland that is itself a wetland. You wind up falling back to the sometimes more difficult question of, is there actually a significant nexus? So I don't see this exception as a dead letter, as you characterize it. MR. ALITO Your Honor, the reason why we believe that it is a dead letter or rendered superfluous by the Corps' interpretation is precisely because there is no circumstance where it would otherwise do any work, where it might otherwise claw back something that would otherwise be subject to the Corps' jurisdiction, unless in circumstances that are present here, in Universal Welding's example. Because the example of the isolated wetlands that the Corps offers as an instance where it would do some work, there, there's no work to be done. Isolated wetlands are already beyond the statutory authority of the agencies, so there really is no point in including an express statement to that fact in the regulation. The regulation otherwise would have no work to do, and it's precisely because of that superfluousness. MR. TURNER I'll take, take the situation. Assume there was no significant nexus here. The wetland we're talking about here wouldn't be picked up by the regulation because it's simply adjacent to a wetland. Why doesn't that count for something? MR. TURNER It does count in terms of the conclusion that there's no jurisdiction, but it's not  MS. BENTON Why doesn't it count for the fact that this has work to do in your terms? That is, this will separate out things over which there is jurisdiction and things over which there is not. So it's still doing a lot of work. I don't understand why it wouldn't be. MR. TURNER The point of the jurisdictional exception in the regulation is to say, the Corps is saying we might otherwise regulate this, but we're choosing by regulation not to regulate it. If there is no significant nexus, then the Corps couldn't regulate it even if it wanted to regulate it by regulation. And that's how the work is done. If I may reserve the balance of my time. MS. BENTON You may. MR. TURNER I may have pleased the Court, John Arbab on behalf of the Army Corps. The Court has recognized this is an our case, and the Corps has a permissible reading of its A-7 regulation, and the plaintiff hasn't shown that that interpretation is plainly erroneous or inconsistent with the right. MR. TURNER Let's see, December versus Northwest Environmental Development Circuit, right? MR. BENTON Yes. It's a well-settled principle of administrative law, going back to the Seminole Rock case in the mid-1940s. And there's a footnote in it. MR. TURNER It's less well-settled than it used to be, but that's the future. MR. BENTON Exactly, Your Honor. I mean, the plaintiff makes it quite clear in a footnote in its opening brief that it disagrees with that standard, but it also concedes that it is the controlling principle and makes reference to the fact that there could be a cert petition down the road in this case. But all of that is... MR. TURNER What does the appellant have to show under the plainly erroneous standard where we're interpreting regulations under our, what would it have to show in this case to be successful?  BENTON Well, it's a pretty difficult standard to meet. I think the court, one way that a regulation, an interpretation of regulation could be plainly erroneous is if it is inconsistent with the regulatory text. But here it's plaintiff's interpretation that is inconsistent with the text. For one thing, the plaintiff has to add the word immediate to Section A7 regulation to get the result it wants. In other words... MR. TURNER You mean by saying immediately adjacent rather than just adjacent? BENTON Exactly, Your Honor. And here, immediately is not in the regulation. If you want to look at immediacy, well, the closest wetland, the closest water feature to which the Lot C wetland, Lot 3 wetlands are adjacent is the jurisdictional wetland on the other side of Peridot Road. But that would be the immediate, immediately adjacent water feature. But the word immediate is not in the statute. Under the Rapanos Guidelines, the Lot 3 wetlands are also adjacent to Channel C on account of the subsurface hydrological connection, among other things, that is completely consistent with the post-Rapanos Guidelines. MR. TURNER We're under our... In this case, the agency and the Corps' construction seem to have flowed from the results of Rapanos or Rapanos. How is our to be interpreted in the context where its view of its own regulation is changed or affected by a Supreme Court case as opposed to anything else? Does that change our analysis? MR. BENTON I don't think so, Your Honor. The plaintiff does make a point about the Swank decision and how that deprived Section A-7, the parenthetical, of any interpretive force. But that's just not correct because, as we point out in the brief, the Swank case post-dated this regulation by several decades. In other words, the regulatory history shows that the Corps had put into effect, or EPA, had put into effect this parenthetical long before the Swank decision. So 20 years later, the Supreme Court comes along and says, Corps, you know, at least with respect to certain isolated wetlands, you're right. Your regulation was correct. That doesn't somehow mean that the regulation was meaningless or did no work before the Supreme Court came along and issued its decision decades later. And as we also point out in the brief, going forward from Swank, which was a 2001 decision, the exception continues to do work because it excludes, by the plaintext, if the wetlands at issue were only adjacent to another wetland listed in paragraphs A-1 through A-6 of the regulation, then those subject wetlands would not be jurisdictional. They would need to be adjacent to some other type of water listed in A-1 through A-6 other than wetlands. So I guess in sum, the regulation exception had a lot of work to do before Swank and even after Swank it continued to have work to do. And it is not a dead letter as the plaintiffs have characterized it. Another helpful way I found of thinking about this is, suppose the intervening wetlands here had only been one foot wide rather than considerably wider or larger than that. That wouldn't make any difference on plaintiff's reading because even though the wetlands were only one foot wide, the thing to which the Lot 3 wetlands were immediately adjacent would be the one foot wide wetlands on the other side of the road. And that just doesn't make sense. If the wetlands were six inches wide, a foot wide, three feet wide, it wouldn't make any difference under plaintiff's reading because still the only thing to which the Lot 3 wetlands would be immediately adjacent would be those other wetlands, no matter how narrow the distance between those wetlands and Channel C. These are all conclusions that are nowhere compelled or even really suggested by the language of the regulation and the CORE has... Is Alaska adjacent to any other United State? I'm sorry, Your Honor, could you repeat? Is Alaska adjacent to the state of Washington? I'd say just as in layman's language it's adjacent, the state of Alaska is adjacent to, I think it's the Yukon Territory. You wouldn't say it's adjacent to the state of Washington? No, and I don't think I would say that it was bordering or neighboring because there's several thousand miles in between Alaska and the state of Washington. Well, that's part of what's being argued by plaintiff here, that adjacent means next to, that you don't have to insert the word immediately. I think you do, Your Honor, because I mean it's throughout plaintiff's opening and reply briefs. When they explain their position, it always turns on the notion of immediate adjacency. That's the question I just posed and you indicated, well, there's a gap between Alaska and the state of Washington, so it's not adjacent. There is a meaning of the word adjacent that suggests an immediacy. Adjacency is defined by regulation and it's also, that's the regulation at 328C. It's also... Which includes as being adjacent those things that are separated by certain things. Yes, and here the court found that it was significant that the Lot 3 wetlands were separated from Channel C by an artificial berm, i.e. Peridot Road. And also, as Judge Smith noted earlier, the Post-Raponos Guidelines articulate three further criteria as to what adjacency means in this context of adjacent wetlands, and all three of those criteria were factually found to be present here, only one of which is necessary for an adjacency finding. And the factual bases, as I understand it, are not really being contested. So Judge Clifton, I think you could have a situation where Lot 3 wetlands situated in Alaska would not be reasonable for the agency to find that they were adjacent to some water body in the state of Washington, but that is certainly not this case. What we have here is more a, I would say, facial attack on the court's interpretation of this reg. In other words, the plaintiff would have to show that there is no conceivable... Well, in a sense, it's almost a facial attack on the reg, because the reg already defines adjacent wetlands to include wetlands that are separated from waters of the United States by a whole bunch of stuff. Yes, Your Honor. So... As the district court pointed out, I think it's around ER 20 or so, this very point came up before the district court, and the district court quite correctly pointed out that the plaintiff has never made a challenge to the adjacency regulation in 328C, and the court, the judge said, was not about to make the plaintiff's argument for it. So as the case comes to this court, you have Lot 3 separated by an artificial berm from Channel C. Plaintiff's rejoinder is, no, no, no. It's immediately separated by Peridot Road from the wetlands across Peridot Road, and that's dispositive. But for the reasons we've been discussing, that under ours certainly is not the way the case should be analyzed. Can you explain something to me? My notes reflect that following Rapanos, that the EPA and the court issued a joint memo that contained these three criteria, the first one of which is the unbroken surface or shallow subsurface connection. Was the joint memo the result of a normal APA process, or was this just an internal guideline that was discussed? In other words, I want to find out, did it have the force of law, basically? Your Honor, my understanding is that what we're focusing on is the December 2008 version of the post-Rapanos guidelines. My understanding is that in 2007, before 2008, the court and EPA had come up with a joint set of guidelines, which were put out, I believe they were put out for comment. Well, the memo on its face says that in footnote one, that the memo was originally issued on June 6, 2007, and that careful consideration was given to public comments received, and that those were incorporated into the new memo. In terms of the December 2008 memo, we have what looks to me like notice and comment rulemaking. And I think the further salient point is that none of the relevant adjacency criteria in that memo are being challenged, and as we point out in a footnote in the brief, those criteria also reflect the court and EPA's joint understanding of what their own regulations mean, and they are entitled to deference for that reason, too. We should, for our purposes and how we apply our, in this case, should construe this joint memo as having been issued pursuant to the Administrative Procedures Act, as opposed to just some administrators that had a little exchange and decided this is what they were going to do. Yes, Your Honor. I think the footnote in the memo that Judge Graber referred to lays out the history of how the 2008 version came about. I have some time left, but unless there are further questions, I think... No rule says you have to use them all, so... Thank you. I would just ask then that the judgment be affirmed. Thank you, Counsel. Mr. Schiff, you have a little bit of time remaining. Thank you, Your Honors. With respect to the Rapanos memo, my recollection is that it expressly disclaims any binding impact in one of the footnotes. But moreover, I think it would be odd for a court to defer to that memo, given that it's by and large an interpretation of a judicial decision. And typically, agencies, I don't believe, get deference to how a judicial decision should be interpreted. With respect to the Swank case, it is true that it came several years after the regulatory exception and issue here was promulgated, but it's not as if even in Swank the court was saying that we as an agency can regulate isolated wetlands. What the court was saying is that our migratory waterfowl rule makes otherwise isolated wetlands not isolated. And so, to that extent, it was not a new statement of the law. And lastly, I would like to point out with respect to the court's hypothetical about a one-foot wide wetland that might separate universal wellings property from another regulatory feature. In that circumstance, it's plausible that the court could invoke its wetlands network theory, one which at least one district court has accepted, but which the court in this case has expressly disclaimed. And so, to the extent that that is a concerning hypothetical, there are certainly ways of a court dealing with that without at the same time recognizing that the exception should have meaning and should result in universal wellings wetlands being declared not jurisdictional. If there are no further questions, thank you, your honors. Thank you very much, counsel. The case just argued is submitted and the arguments of both of you were very helpful in this challenging case.
judges: Graber, Clifton, M. Smith